IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

JENNIFER ANN JONES,

      Plaintiff,

v.                                    Civil Action No. 2:13-cv-03405

CAROLYN W. COLVIN, COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION,

      Defendant.

### MEMORANDUM OPINION

This is an action seeking review of the final decision of the Commissioner of Social Security denying Plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  Presently pending before the Court are Plaintiff's Brief in Support of Judgment (ECF No. 13) and Defendant's Brief in Support of Defendant's Decision (ECF No. 16).  Both parties have consented to a decision by the United States Magistrate Judge.

Claimant, Jennifer Ann Jones, filed an application for Social Security Disability Insurance Benefits and Supplemental Security Income benefits on April 7, 2009, alleging disability beginning January 1, 2007.  Claimant asserts experiencing the following conditions:  "heart disease, diabetes, COPD [chronic obstructive pulmonary disease], carpal tunnel, degenerative disc disease" (Tr. at 170).  The claims were denied initially on December 14, 2009, and upon reconsideration on March 11, 2010.  Thereafter, Claimant filed a written request for hearing on April 15, 2010.  Claimant

1

appeared at an administrative hearing held by an Administrative Law Judge (hereinafter ALJ) in Charleston, West Virginia, on September 19, 2011.  A decision denying the claims was issued on October 3, 2011.  Claimant's request for review by the Appeals Council was denied on December 27, 2012.  Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. §§ 404.1520, 416.920 (2012).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  *Id.* §§ 404.1520(a), 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  *Id.* §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  *Id.* §§ 404.1520(d), 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  *Id.*  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  *Id.* §§ 404.1520(e), 416.920(e).  By satisfying inquiry four, the claimant establishes a *prima facie* case of disability.  *Hall v. Harris*,

658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f) (2012).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date of January 1, 2007, through the last date she was insured, December 31, 2009 (Tr. at 15).  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of diabetes mellitus, ischemic heart disease, bilateral carpal tunnel syndrome (hereinafter CTS), chronic obstructive pulmonary disease (hereinafter COPD), gastroparesis, history of rotator cuff injury to the left shoulder, lumbar disc disease and dysthymia. (*Id.*)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any Listings in 20 CFR Part 404, Subpart P, Appendix 1 (Tr. at 17).  The ALJ then found that Claimant has a residual functional capacity (RFC) to perform a range of light work, reduced by nonexertional limitations[1] (Tr. at 19).  The ALJ found that Claimant has no past relevant work that rise

---

[1] Claimant is able to lift and carry 20 pounds occasionally and 10 pounds frequently; can stand, walk and sit about six hours, respectively in an eight-hour workday; can occasionally use the upper extremities and lower extremities in pushing or pulling; is precluded from climbing ropes, ladders or scaffolds; can occasionally climb stairs and ramps, balance, stoop, kneel, crouch and crawl; engage in occasional fingering; and must avoid all exposure to unprotected heights and moving machinery and even moderate

to the level of substantial gainful activity (Tr. at 22).  The ALJ concluded that Claimant could perform jobs such as bench worker, small product assembler, surveillance system monitor, final assembler, rater/sorter and product inspector (Tr. at 21).  On this basis, Claimant's applications were denied (Tr. at 23-24).

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.   In *Blalock v. Richardson*, substantial evidence was defined as:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."  *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record, which includes medical records, reveals the decision of the Commissioner is supported by substantial evidence.

---

exposure to extreme cold, extreme heat, vibrations, fumes, dust, gases and poor ventilation.  She would be limited to jobs that have no required production rate or work pace (Tr. at 19).

Claimant's Background

Claimant was born on September 2, 1959 (Tr. at 22). Claimant completed eleventh grade and later obtained a general educational degree (GED) (Tr. at 37). Claimant reported her prior work history consisted of jobs working as a sales clerk and a bingo floor attendant (Tr. at 203). Licensed psychologist Sheila Emerson Kelly, M.A., conducted a Psychological Evaluation of Claimant on May 7, 2010, almost a year after Claimant filed applications for disability under the Social Security Act. Ms. Kelly reported that Claimant's counsel was "attempting to identify any cognitive or emotional disabilities which would interfere in [Claimant's] ability to work" (Tr. at 410). Claimant reported to working part-time as a bingo caller from 1992-2008 (Tr. at 411). Claimant reported that her husband of approximately 12 years has paid the bills (Tr. at 412). However, her husband was laid off[2] the year before the Psychological Evaluation (Tr. at 413). Claimant reported during the Psychological Evaluation that her hobbies in the past included hunting and fishing, particularly deer hunting.[3] Claimant reported that she went hunting with her husband for two weeks last year during deer season (Tr. at 417).

Claimant argues the decision by the ALJ is not supported by substantial evidence. Claimant asserts that the ALJ failed to consider all of Claimant's limitations in the residual functional capacity assessment (hereinafter RFC). Claimant asserts that the ALJ failed to accord adequate weight to the opinion of her primary care physician, Jennifer Hadley, D.O., with Kanawha Medical Center. Defendant asserts that the ALJ

---

[2]Claimant alleges a disability onset date of January 1, 2007. Claimant filed applications for disability on April 7, 2009 (Tr. at 169). On May 7, 2010, Claimant reported her husband was laid off the prior year (Tr. at 413).

[3] Claimant alleges a disability onset date of January 1, 2007, however, Claimant reported to hunting for two weeks a year prior to her Psychological Evaluation on May 7, 2010 (Tr. at 417).

reasonably attributed little weight to the conclusions of Dr. Hadley.   Dr. Hadley's conclusions were not well-supported by the evidence of record and were inconsistent with her own treatment records and those of other medical professionals.   Defendant asserts that substantial evidence supports the ALJ's RFC determination of limiting Claimant to a range of light work, involving only occasional use of her extremities in pushing or pulling, only occasional fingering and no required production rate or pace work.

Claimant's Medical Background

X-rays taken of Claimant's lumbar spine at Upper Kanawha Medical Center on August 10, 2004, were within normal limits. An MRI of Claimant's lumbar spine performed on August 16, 2004, showed a posterior central protrusion of disc material at L4-5 level with minimal impingement upon the anterior aspect of the thecal sac, minimal posterior bulging of the disc material at L5-S1, degenerative disc disease at L50S1 and dextroscoliosis of the lumbar spine (Tr. at 252).

Claimant saw orthopedic surgeon Luis A. Loimil, M.D., on January 20, 2006, claiming that she fell on December 31, 2005, getting into her truck (Tr. at 250).  She complained of lower back pain that radiated into both her lower extremities.  Claimant reported a previous injury to her spine in a moving vehicle accident approximately 20 years prior.   Claimant reported her only treatment after the vehicle accident was physical therapy.  (*Id.*) Dr. Loimil started Claimant on a course of physical therapy (Tr. at 252).

Prasadarai B. Mukkamala, M.D., performed an EMG of Claimant on May 10, 2006.  Dr. Mukkamala reported that physical examination of Claimant revealed that the range of motion in her upper extremities was good (Tr. at 254).   Dr. Mukkamala's

impression included "evidence of bilateral carpal tunnel syndrome."  Claimant's motor and sensory examination were unremarkable.

In June 2007, Claimant was treated by Dr. Hadley for complaints of left shoulder and left arm pain following coronary artery bypass grafting less than one year prior. Claimant reported experiencing discomfort when attempting to lift her arm above her head (Tr. at 505).  On August 29, 2007, Claimant reported that the pain in her left shoulder had gotten worse.  Claimant reported to experiencing pain when lifting or moving her arm.  Claimant denied any past injuries to her shoulder (Tr. at 501).  After reviewing an MRI of Claimant's shoulder, Dr. Hadley reported the MRI showed "some chronic bursitis" (Tr. at 502).  Dr. Hadley directed Claimant to attend physical therapy to help strengthen her shoulder and decrease the pain and to continue taking the prescription pain medicine Darvocet.  (*Id.*)

On September 7, 2007, Claimant reported during physical therapy at CAMC Physical Therapy & Sports Medicine Center that she was working as a bingo caller (Tr. at 289).  Claimant reported that pain pills help decrease the pain.  On September 17, 2007, Claimant reported that her left shoulder catches on occasion.  She reported that her pain had improved since the last visit and was now at a pain level of 4 out of 10 (Tr. at 287). On September 19, 2007, Claimant rated her pain to be a 7 out of 10 but felt that she was "doing better."  (*Id.*)

On September 24, 2007, Claimant reported her pain level to be 7 out of 10 (Tr. at 286).  On September 26, 2007, Claimant reported that her stiffness had decreased and asserted her pain level to be 5 out of 10.  On October 11, 2007, Claimant reported her pain level as 5 out of 10 (Tr. at 284).  On October 15, 2007, Claimant was treated for left shoulder pain in physical therapy (Tr. at 283-284).  Physical therapy notes reported

Claimant's pain level decreasing from an initial 8 out of 10 to a 5 out of 10 (Tr. at 283). The physical therapy assessment reported that Claimant's left shoulder range of motion and strength had improved.  Claimant no longer suffered from constant achy pain at rest.  Claimant only reported pain when using her left shoulder.  Claimant was treated for right shoulder pain[4] and left hand pain in physical therapy on April 10, 2008 (Tr. at 281, 282).  Claimant reported her pain level to be a 2 or 3 out of 10.  Claimant reported to receiving injections from the pain clinic.

On April 24, 2008, Claimant reported that her left shoulder was doing a little better (Tr. at 278).  At physical therapy on May 5, 2008, Claimant reported experiencing no pain (Tr. at 276).  On May 7, 2008, Claimant rated her pain as a 2 out of 10. Claimant was discharged from physical therapy on May 8, 2008 (Tr. at 275).

Claimant began treatment with Dr. J.K. Lilly for chronic left shoulder pain and arm pain radiating into the left hand with numbness at the Appalachian Pain Therapy Institute. Claimant received steroid injections and continued treatment through July 2008.  Treatment notes during this time reveal that Claimant continuously told Dr. Lilly about continuing left shoulder pain and pain and numbness radiating into the left hand, which limited range of motion and was aggravated by repetitious movements (Tr. at 297).  Claimant reported her shoulder improving from 20% pain relief after the first steroid injection in her left shoulder to 80% after the second injection (Tr. at 297, 304). After receiving her 2nd steroid injection in her left shoulder, Claimant rated her pain to be 1 out of 10 (Tr. at 297).

---

[4] On April 10, 2008, Charleston Area Medical Center's Physical Therapy & Sports Medicine Center completed a shoulder evaluation.  The evaluation reported Claimant's referring diagnosis as left shoulder bursitis (Tr. at 281). However, Claimant's prior medical history reported a partial rotary cuff tear in her right shoulder.

Claimant was treated by Dr. Hadley in April 2009, for chief complaints of bilateral hand pain and numbness. Claimant reported that she experienced hand weakness and popping in her thumb joints. Dr. Hadley referred Claimant to Quentin K. Tanko, M.D., in April 2009 for treatment of her bilateral CTS (Tr. at 319). Upon examination, Dr. Tanko reported Claimant's range of motion of all digits were normal and symmetric. Dr. Tanko reported "no triggering, no pain." (*Id.*) Claimant received an injection in her hand for CTS during a follow-up exam on June 10, 2009 (Tr. at 318). X-rays of both hands were "essentially normal" (Tr. at 319). Dr. Tanko reported that Claimant wore splints which decreased the pain and numbness from her carpal tunnel syndrome (Tr. at 318). Claimant completed a Disability Report dated January 20, 2010 (Tr. at 204-213). In the Disability Report, Claimant asserted that she has trouble using hands due to the severity of carpal tunnel syndrome which causes her to sometimes drop things (Tr. at 205).

Claimant was seen by Dr. Hadley in September 2009 with a chief complaint of experiencing low back pain into her hips and knees. Examination revealed pain to palpation of her lumbar spine with paraspinal spasms, as well as pain with flexion and extension. X-rays revealed ostophytes and vertebral lipping of the lower lumbar spine (Tr. at 567). On October 20, 2009, Claimant saw Dr. Hadley with complaints of worsening lower back pain, pain and numbness going down both legs and a history of uncontrolled diabetes type 2 (Tr. at 570). In the Personal Pain Questionnaire and Adult Function Report completed on November 20, 2009, Claimant reported that walking, sitting and stooping increases the pain (Tr. at 185). Claimant described her pain as an 8 to 10 out of 10 (Tr. at 186). Claimant reported the numbness in her hands and arms lasts all day and the numbness in her back and legs lasts 30 minutes to an hour (Tr. at

9

184-186).   Claimant reported experiencing aching, burning, stabbing, stinging and cramping pain in her back and legs from one hour to all day (Tr. at 184). Claimant asserted that she experiences aching, stabbing, stinging, cramping and throbbing pain in her hands and arms several times throughout the day  (Tr. at 185-186).  Claimant reported the only time she experiences relief from the pain in her hands and arms is when she sleeps (Tr. at 186).

Claimant reported her daily activities to include fixing breakfast, cleaning the kitchen, running a sweeper, fixing dinner, washing dishes, dusting, washing laundry and watching television (Tr. at 188, 190).  Claimant reported to taking breaks to nap and rest in between performing her daily activities.  Claimant reported to feeding and cleaning the litter box for her pets (Tr. at 189).  Claimant goes grocery shopping once a week (Tr. at 191).    Claimant reported to paying bills, counting change and using a checkbook/money order.  (*Id.*)  Claimant reported her hobbies and interests to include playing bingo with her mother (Tr. at 192).  She reported to going to the bingo hall and a friend's house approximately once a week.  On her Adult Function Report, Claimant asserted that she used to love to go fishing and hunting but isn't interested in it like she used to be since her medical conditions began.  (Id.)

On December 11, 2007, James Egnor, M.D., performed a Physical Residual Functional Capacity assessment of Claimant (Tr. at 350-357).  Dr. Egnor assessed Claimant's physical abilities based upon her medical history.  Dr. Egnor opined that Claimant could engage in a limited range of light work.  Specifically, Dr. Egnor opined that Claimant could occasionally lift and/or carry up to 20 pounds and frequently lift up to 10 pounds (Tr. at 351).  Claimant could stand and/or walk about 6 hours in an 8 hour workday and sit for a total of about 6 hours in an 8 hour workday.  Dr. Egnor also

assessed that Claimant could occasionally engage in postural activities.  Dr. Egnor found that Claimant had no manipulative limitations (Tr. at 354).  On March 10, 2010, Rabah Boukhemis, M.D., a state medical consultant, reviewed and concurred with Dr. Egnor's RFC findings (Tr. at 407).

On December 14, 2009, Ramona Wyatt performed a Vocational Analysis of Claimant (Tr. at 203).  Ms. Wyatt's assessment found that Claimant could perform either of her past jobs of bingo floor attendant and sales clerk.  Ms. Wyatt concluded that Claimant was not disabled.  On March 11, 2010, Wilda Quinn performed a Vocational Analysis of Claimant (Tr. at 218). Ms. Quinn found that Claimant could perform past work with light, postural and environmental physical limitations.

Prasuna Jami, M.D., examined Claimant in March, April and May 2011, for her medical condition of Diabetes 2.  Dr. Jami reported no back deformity or tenderness upon examination (Tr. at 648).  Claimant had normal range of motion of her back.  On June 2, 2011, Claimant saw Dr. Hadley with the chief complaint of falling onto her left hip while chasing her dog (Tr. at 686).  On July 15, 2011, Claimant saw Dr. Hadley with the chief complaint of lower back pain (Tr. at 687).  Claimant reported that her back began hurting "after doing a cartwheel while playing with her grandkids followed by a misstep walking on the stairs and laying on a hospital gurney for a few hours while being evaluated for chest pain." (*Id.*)

Dr. Hadley referred Claimant to neurologist Matthew P. Walker, M.D. (Tr. at 708).  Dr. Walker evaluated Claimant for alleged lower back pain.  Dr. Walker opined that Claimant's lower back MRI showed only minimal disc bulging with no neurologic compression  (Tr. at 709).  Dr. Walker recommended physical therapy (Tr. at 711).

Treating Physician Analysis

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. § 404.1527(d)(2) (2012). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence*." Ward v. Chater*, 924 F. Supp. 53, 55 (W.D. Va. 1996); *see also*, 20 C.F.R. § 404.1527(d)(2) (2012). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits.  20 C.F.R. §§ 404.1527(d)(2) (2012).   Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact and resolve conflicts of evidence*.  Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  As noted above, however, the court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational.  *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1994).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. § 404.1527.  These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization and (6) various other factors.  Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."  Id. § 404.1527(d)(2).

Claimant testified to being diagnosed with bilateral carpal tunnel syndrome in 2006 (Tr. at 44). Claimant testified to being a diabetic for the prior 10 to 12 years (Tr. at 45). Claimant testified that she became disabled on January 7, 2007, after experiencing a heart attack[5] (Tr. at 39). As a result of the heart attack, Claimant had open heart surgery (Tr. at 40). She testified to having difficulty picking up and dropping the bingo ball when she tried to go work in 2008 (Tr. at 47).

Claimant testified at the administrative hearing that in 2008 she worked three hours one day a week as a bingo caller (Tr. at 38). She testified that she went hunting or fishing before the heart attack but can't do either activity now (Tr. at 40). Claimant argues that the record is replete with evidence documenting Claimant's manipulative limitations, however, the ALJ failed to consider them in the RFC. Claimant asserts the ALJ failed to accord adequate weight to the opinion of Claimant's primary care physician, Dr. Hadley. The ALJ gave Dr. Hadley's opinion little weight (Tr. at 22). On March 31, 2010, Claimant reported during an office visit with Dr. Hadley that she had retired from employment (Tr. at 576). On January 21, 2011, Dr. Hadley completed a questionnaire for Claimant's disability applications reporting that Claimant was disabled, based upon Dr. Hadley's opinion and examination of medical records (Tr. at 586).

Claimant's Challenges to the Commissioner's Decision

Claimant asserts the ALJ failed to include the limitations associated with Claimant's bilateral CTS when he formulated Claimant's RFC. Claimant asserts the ALJ's RFC assessment failed to take into account Claimant's back pain and limitations

---

[5] Claimant's applications for disability assert Claimant's onset date of her disability as January 1, 2007, however, Claimant testified that she stopped working full-time on January 7, 2007, due to a heart attack (Tr. at 39, 152).

13

regarding sitting and standing.   20 C.F.R. § 404.1546(c) states that assessing a Claimant's RFC is the responsibility of the ALJ or the Appeals Council.  A finding of disability determination is reserved for the Commissioner.   The Commissioner is responsible for reviewing all the medical findings and other evidence that supports a medical source's statements.  A medical source's statement that a person is "disabled" or "unable to work" does not mean that the Commissioner will find the person disabled. See 20 C.F.R. § 404.1527(e) and SSR 96-5p.  The RFC finding should include only those limitations that are supported by the record.  *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005).  The opinion of a treating doctor on issues reserved to the ALJ, such as the RFC, can never be entitled to controlling weight or given special significance.  20 C.F.R. §§ 404.1545(c); SSR 96-5p; *Brown v. Astrue*, 649 F.3d. 193, 197 n. 2 (3rd Cir. 2011) ("the opinion of a treating physician does not bind the ALJ on the issue of functional capacity.).  The ALJ weighed and considered the medical evidence of record and determined that Claimant had the RFC to perform a limited range of light work with the above mentioned limitations.   Substantial evidence supports the ALJ's determination and limitations.

In July 2011, Dr. Walker reviewed an MRI of Claimant's spine and opined that Claimant only had minimal disc bulging with no nerve compression and recommended Claimant undergo physical therapy (Tr. at 709, 711).  Dr. Walker discussed receiving injections at the pain clinic with Claimant, however, Claimant stated that she was not interested in this option, even though Claimant previously reported improvement from treatment with injections (Tr. at 711).  Dr. Egnor and Dr. Boukhemis opined that Claimant could perform a limited range of light work.  The ALJ gave some weight to the opinions of the state agency physicians, insofar as they were consistent with other

evidence of record (Tr. at 21).  After careful consideration of the evidence, the ALJ concluded that Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extend they are inconsistent with the RFC on or before the date she last met the disability insured status requirements (Tr. at 20).   The ALJ concluded that Claimant's evidence of record demonstrates that she has received various forms of treatment for her allegedly disabling symptoms that were generally successful in controlling those symptoms.

Vocational Expert (hereinafter VE) Nancy Shapiro testified that after reviewing the evidence of record and listening to the testimony at the administrative hearing, her opinion was that a person with Claimant's age, education, training, work experience and previously stated exertional limitations could perform light work available regionally and nationally.  VE Shapiro testified that such a person could perform jobs including counter clerk, ticket taker and sorter (Tr. at 81).  The ALJ ruled that Claimant could perform work in the national economy, and therefore, she was not disabled under the Act (Tr. at 23-24).  Pursuant to SSR 00-4p[6], VE Shapiro's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Conclusion

The ALJ's decision was issued on October 3, 2011.  The ALJ found that Claimant's impairment does not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  Substantial evidence supports the determination of

---

[6] Social Security Ruling 00-4p:  Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions.

the ALJ.  The ALJ appropriately weighed the evidence of record in its entirety to determine that Claimant failed to demonstrate that she was unable to perform any substantial gainful activity.  The ALJ fully complied with his duty in keeping with 20 C.F.R. § 404.1523 (2012).  Accordingly, the ALJ denied Claimant's applications for DIB and SSI under the Social Security Act.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence.  Accordingly, by Judgment Order entered this day, Claimant's Brief in Support of Judgment on the Pleadings is DENIED, Defendant's Brief in Support of Defendant's Decision is GRANTED, the final decision of the Commissioner is AFFIRMED and this matter is DISMISSED from the docket of this Court.

The Clerk of this Court is directed to provide copies of this Order to all counsel of record.

**Enter:  March 31, 2014.**

Dwane L. Tinsley
United States Magistrate Judge

16